UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**KENNETH SHEARD**                                                                                     **PLAINTIFF**

v.                                                                                         **NO. 3:20-cv-152-BJB**

**NOVO NORDISK, INC.**                                                                              **DEFENDANT**

\* \* \* \* \*

**OPINION & ORDER**

      Kenneth Sheard—a pharmaceutical sales representative for Novo Nordisk—traveled in his company vehicle with his supervisor on a 2018 sales call. Heading into a doctor's office, the supervisor warned Sheard to be careful "because of a large homeless population" in the area. Amended Complaint (DN 5) at ¶ 9; Sheard Dep. (DN 38-1) at 48; Summary Judgment Motion (DN 38) at 4. Not to worry, said Sheard: he was "packing." Amended Complaint ¶ 11. Naturally, his supervisor inferred that Sheard had a gun in the car. But this was a miscommunication; Sheard was carrying a taser.

      Two months later, and apparently without giving Sheard a chance to clear up the miscommunication, Novo Nordisk fired Sheard for violating a company policy that prohibits employees from carrying firearms in company-owned vehicles. *See* Termination Letter (DN 38-3); Company Policy (DN 38-2) at 4. Sheard sued Novo Nordisk for firing him. Kentucky law, he notes, imposes civil liability on persons—including employers—that prohibit a person from keeping a firearm in a vehicle. *See* KRS § 527.020(8). As explained in this Court's prior opinion (DN 16), Novo Nordisk didn't and indeed couldn't have punished him for carrying a gun in his car—because Sheard did not in fact have a gun in his car. Did Novo Nordisk nevertheless *attempt* to prohibit Sheard from carrying a gun? The statute bars that, too. § 527.020(8).

      But another provision authorizes private employers to prohibit employees from carrying firearms in company vehicles—such as the one Sheard was driving when he claimed he was "packing." KRS § 237.110(17). In any event, no evidence shows Novo Nordisk was attempting to violate § 527.020(8). So the Court grants Novo Nordisk's motion for summary judgment and dismisses Sheard's remaining claims.

**I.**

Sheard filed an amended complaint against Novo Nordisk under § 527.020(8), which imposes civil liability on any "person or organization" that "prohibit[s] a person from keeping a loaded or unloaded firearm … or other deadly weapon in a vehicle." Sheard also asserted a Kentucky wrongful-termination claim on the same theory. Am. Compl. ¶¶ 24–37.[1]

The Court declined to dismiss these twin claims. Even though a taser is not a firearm or deadly weapon under applicable Kentucky law, *see* MTD Opinion (DN 16) at 3–8, Sheard plausibly pled that the company *believed* Sheard was carrying a firearm in his car. Accepting this as true, Novo Nordisk conceivably attempted to violate § 527.020(8), which can lead to civil lability. *See* MTD Opinion at 8–9; § 527.020(8) ("Any attempt by a person … to violate the provisions of this subsection" may be liable for damages). Sheard also plausibly pled a second claim—for violating "a well-defined public policy" (namely § 527.020(8))—that the parties agreed rose and fell together with the statutory claim. *See* Summary Judgment Hearing (DN 49). Based on the possibility that Novo Nordisk attempted to violate Sheard's right to carry in his car, the Court ruled that his claims survived dismissal on the pleadings. MTD Opinion at 9–11.

Novo Nordisk now moves for summary judgment (DN 38). Its motion points to two facts that have emerged, apparently without dispute, since the pleadings stage. First, Sheard was driving a company car, DN 38-1 at 30, not his personal car, *contra* Am. Compl. ¶¶ 10–12. Second, Novo Nordisk fired Sheard for violating a company policy against carrying firearms in company-owned vehicles, not personal vehicles. *Compare* Termination Letter (DN 38-3) *and* Company Policy (DN 38-2) at 9 *with* Am. Compl. ¶¶ 13–14.[2]

Novo Nordisk says these facts are dispositive. An earlier-enacted statute, KRS § 237.110(17) (quoted in full below), expressly allows that "a private … employer may prohibit employees … from carrying concealed deadly weapons, or ammunition, or both in vehicles owned by the employer." Sheard doesn't dispute that this language would cover his claims if it applies—but maintains it doesn't: the plain language of the later-enacted § 527.020(8), he contends, applies notwithstanding the apparent

---

[1] Sheard's amended complaint included a third claim under KRS § 237.106. Am. Compl. ¶¶ 19–23. This statute imposes civil liability on an employer who prohibits someone from "possessing a firearm … in a vehicle on the property" of the employer. § 237.106. The Court dismissed Sheard's § 237.106 claim because "his complaint says nothing about the location of the taser-containing car." MTD Opinion (DN 16) at 3.

[2] Novo Nordisk's policy provides that "[p]ossession of weapons, firearms, or destructive devices in a NNI fleet vehicle" "may result in immediate termination." Company Policy at 9.

2

employer safe harbor set out in § 237.110(17). To him, the law against prohibiting guns in "vehicles" covers *all* vehicles—including those owned by an employer.

## II.

The parties ask a version of a question familiar to practically everyone who spent even a year in law school: what is, or might be, "a vehicle?" *See, e.g.*, H. L. A. Hart, *Positivism and the Separation of Law and Morals*, 71 HARV. L. REV. 593, 607 (1958). That simple question, however, often lacks a simple answer. Professor Hart, at least, perceived in response to his hypothetical "a core of settled meaning" plus "a penumbra of debatable cases." *Id.* No vehicles in the park "[p]lainly … forbids an automobile" in a public park. *Id.* But does no prohibition on keeping a firearm or ammunition in a vehicle under KRS § 527.020(8) cover company cars?

To start, the ordinary meaning of the term "vehicle" easily embraces a car:

> No person or organization, public or private, shall prohibit a person from keeping a loaded or unloaded firearm or ammunition, or both, or other deadly weapon in a vehicle in accordance with the provisions of this subsection.

§ 527.020(8). Nothing in that text expressly excludes personal automobiles, and the surrounding provisions address other types of vehicles in a way that puts a person's own car firmly in the "core of settled meaning" of the term "vehicle." *See* Hart, 71 HARV. L. REV. at 607. No party reads the provision any other way. Because Sheard's personal vehicle would be covered, that statute would appear to prevent Novo Nordisk from trying to bar Sheard from keeping a gun inside it.

What about a company-owned vehicle? Although the text of § 527.020(8) doesn't exclude this category of vehicles, a neighboring (and earlier-enacted) provision does: KRS § 237.110(17) expressly distinguishes between employer- and employee-owned vehicles:

> A private but not a public employer may prohibit employees or other persons holding a concealed deadly weapons license from carrying concealed deadly weapons, or ammunition, or both in vehicles owned by the employer, but may not prohibit employees or other persons holding a concealed deadly weapons license from carrying concealed deadly weapons, or ammunition, or both in vehicles owned by the employee….

The parties agree that Novo Nordisk is a "private … employer." *Id.* They also agree that the evidence shows Sheard was driving a "vehicl[e] owned by the employer." *Id.* They do not address whether Novo Nordisk believed Sheard had "a concealed deadly

3

weapons license,"[3] and appear to assume that Novo Nordisk terminated Sheard based on the (mistaken) belief that he was "carrying [a] concealed deadly weapo[n]" in a company car. *Id.*[4] Given those assumptions, the record on summary judgment indicates that § 237.110(17) allows Novo Nordisk's enforcement of its no-weapons policy—assuming that provision applies.

Sheard understands the broader, uncabined version of "vehicle" in § 527.020(8) to supersede the more specific reference to "vehicles owned by the employer" enacted earlier. And Sheard argues the "vehicle" in the later-enacted statute plainly covers personal *and* employee vehicles. *See* Summary Judgment Response (DN 44) at 6. True, general canons of interpretation favor later-in-time enactments, all else equal. *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007). And Kentucky law provides that "if two statutes are irreconcilable, the later enactment prevails." *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky. 2003).

But here the statutes aren't irreconcilable. Both provisions recognize the distinction between public and private employers and organizations. *Compare* § 527.020(8) ("No person or organization, public or private….") *with* § 237.110(17) ("A private but not a public employer…."). Both deal with the same subject: keeping firearms in cars. And when statutory provisions overlap, the judge's job is to respect the legislature's handiwork by "harmoniz[ing] the law so as to give effect to both statutes." *Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000). Absent a textual indication that one invalidates the other, courts reconcile the text—here, to give lawful gunowners the right to keep firearms and ammunition in their own cars while authorizing private employers the right to keep firearms and ammunition out of company cars. Obviously no text *explicitly* repeals § 237.110(17), and the sort of implied repeal that Sheard advances is disfavored. *See Kentucky Off-Track Betting, Inc. v. McBurney*, 993 S.W.2d 946, 949 (Ky. 1999) ("[T]he repeal of an existing law by implication is not favored by the courts."). Indeed, a neighboring provision in § 527.020—subsection (4)—refers with apparent approval to the earlier-enacted statute:

---

[3] Since 2019, individuals "able to lawfully possess a firear[m] may carry concealed firearms or other concealed deadly weapons without a license in the same locations as persons with valid licenses." KRS § 237.109.

[4] Neither party addresses any additional issues that might arise if Novo Nordisk had fired Sheard for carrying openly in a company vehicle. *See generally* Ky. Const. § 1 (Guaranteeing "[t]he right to bear arms in defense of themselves and of the State, subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed weapons."); *Holland v. Commonwealth*, 294 S.W.2d 83, 85 (Ky. 1956) (distinguishing, in dicta, citizens' concealed- and open-carry rights).

> Persons … licensed to carry a concealed deadly weapon pursuant to KRS 237.110 may carry a concealed firearm or other concealed deadly weapon on or about their persons at all times within the Commonwealth of Kentucky, if the firearm or concealed deadly weapon is carried in conformity with the requirements of KRS 237.109 or 237.110 ….

That same provision goes on to distinguish personal from employer vehicles: "No person or organization, public or private, shall prohibit a person from possessing a firearm, ammunition, or both, or other deadly weapon in *his or her* vehicle in compliance with the provisions of … 237.110 …." KRS § 527.020(4) (emphasis added). This distinction would be meaningless if, as Sheard contends, the reference to "a vehicle" in subsection (8) erased these repeated, adjacent references to personal and employer vehicles. References, moreover, that address the question of guns in cars with more specificity than the blanket prohibition Sheard advocates. *See, e.g.*, *Light v. City of Louisville*, 248 S.W.3d 559, 563 (Ky. 2008) ("Kentucky follows the rule of statutory construction that the more specific statute controls over the more general statute.").

So if Sheard had been driving his own vehicle, Novo Nordisk presumably couldn't have prohibited him from keeping a firearm in the car consistent with § 527.020(4) or (8). But since he was in a company car, the General Assembly appears to have laid down a more limited set of protections that didn't reach his situation. Though Kentucky courts seem never to have addressed this tension between the rights of gun owners and private employers, § 237.110(17) appears to control.[5]

Regardless, a separate factual reason supports summary judgment even assuming § 527.020(8) applied. As the Court explained in its prior order, § 527.020(8) is a criminal statute that imposes civil liability. *See* MTD Opinion at 8–9; § 527.020(8) ("Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief …."). No one contends that Novo Nordisk actually prohibited Sheard from carrying

---

[5] A third potential issue—not raised by the parties—might delimit Sheard's preferred reading. Although the Second Amendment is surely the first constitutional provision this case calls to mind, it may not be the only one implicated. At least some scholars have contended that property rights protected by the Fifth and Fourteenth Amendments would potentially be affected by state laws such as the one Sheard relies on. *See* Ilya Somin, *Gun Rights, Property Rights, and Takings*, DUKE CENTER FOR FIREARMS LAW (Apr. 5, 2022), https://firearmslaw.duke.edu/2022/04/gun-rights-property-rights-and-takings (citing, *e.g.*, Jacob D. Charles, *Securing Gun Rights by Statute: The Right To Keep and Bear Arms Outside the Constitution*, 120 MICH. L. REV. 581, 601–04 (2022) (discussing "parking lot" laws and private-property rights); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) (rejecting distinction between permanent and temporary takings)).

a firearm in the car because, as previously explained, his taser doesn't count as a firearm. MTD Opinion at 8. So his case reduces to a question of attempt liability.

That raises a separate problem. The Kentucky Penal Code defines criminal attempt as "[i]ntentionally engag[ing] in conduct which would constitute the crime if the attendant circumstances were as he believes them to be." KRS § 506.010(1)(a). This "generally" requires proof "that the defendant acted with a specific intent to commit the crime." *United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021).

Sheard admittedly presented no such evidence. And Novo Nordisk pointed (without pushback) to its policy and termination letter as evidence it didn't intend to violate the law. *See* Summary Judgment Hearing (DN 49); FED. R. CIV. P. 56(c)(1)(B) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … showing that the materials cited do not establish the absence or presence of a genuine dispute."). Indeed, Sheard's counsel confirmed during the hearing that no evidence in the record shows a disputed fact over ownership of the car or the company's intent to violate § 527.020(8). Summary Judgment Hearing. To the contrary, the termination letter and company policy support the notion that Novo Nordisk was following a policy that largely tracked § 237.110(17). Novo Nordisk's policy is limited to company vehicles and the termination letter echoed its language. Termination Letter; Company Policy at 9. Because he has not "come forward with 'specific facts showing that there is a genuine issue for trial,'" the Court grants Novo Nordisk's summary-judgment motion with respect to Sheard's statutory claim. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)).

### III.

For largely the same reasons, summary judgment is also warranted on Sheard's public-policy wrongful-discharge claim. Kentucky is a "terminable-at-will" state, which means an employer may terminate an employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). A narrow exception exists when the discharge is "contrary to a fundamental and well-defined public policy as evidenced by existing" "constitutional or statutory" law. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). That's Sheard's position here. But he admits that argument rests on the notion that Novo Nordisk violated § 527.020(8) when it terminated him. *See* Summary Judgment Hearing (agreeing that his wrongful-discharge claim "rises and falls" with the claim under § 527.020(8)). So the Court also grants Novo Nordisk's motion for judgment regarding Sheard's wrongful-discharge claim.

## ORDER

As indicated during the Court's prior hearing (DN 49), consistent with the reasons more fully explained here, the Court grants Novo Nordisk's motion for summary judgment (DN 38).

Benjamin Beaton, District Judge
United States District Court

June 7, 2024